## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| LARRY JEROME BURNS, JR.,    ) | |
| ) | |
|      Plaintiff,        ) | |
| ) | |
| v.                      ) | CV421-113 |
| ) | |
| CHATHAM CNTY. DET. CTR.,    ) | |
| *et. al.*,               ) | |
| ) | |
|      Defendants.    ) | |

## <u>ORDER</u>

Proceeding *pro se* and *in forma pauperis*, Plaintiff Larry Burns, Jr.
filed this 42 U.S.C. § 1983 action against Chatham County Detention
Center, "Capt Irving," Trevor King, "Miss C. Lewis," "Miss Scott," "Miss
Taylor," "Miss Gordo," and "Mr. B. Kephart." Doc. 1. The Court granted
Plaintiff's request to pursue his case *in forma pauperis* (IFP), doc. 4, but
Plaintiff never returned the necessary forms. He did, however, draft a
letter to the Court claiming that "Miss Gordon," who is a Defendant in
the case, was "being arbitrary to the facts," and "trying to make [him]
miss the deadline [to return the form] deliberately." Doc. 8 at 1. In
another letter, Plaintiff complains that the prison never returned his
prisoner trust fund account statement or his consent to collection of fees

1

from trust fund account forms.  Doc. 9.  He also informed the Court that he was released from prison.  *Id.*   Nevertheless, Burns' Complaint must be screened by the Court pursuant to the Prison Litigation Reform Act (PLRA).

## I.   Legal Standard

Under the PLRA, a federal court is required to conduct an initial screening of all prisoner complaints.  28 U.S.C. § 1915A(b).  In conducting the review, the Court must identify all "cognizable claims" and dismiss the complaint, or any portion thereof, that is "(1) frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* The complaints of unrepresented parties are held to a less stringent standard than those drafted by an attorney and are afforded a liberal construction, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers (internal quotations omitted)); however, they must still comply with procedural requirements, *McNeil v. United States*, 508 U.S. 106, 113 (1993).

2

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "A plaintiff . . . must plead facts sufficient to show that [his] claim has substantive plausibility" and to inform the defendant of "the factual basis" for the complaint. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In its screening, the Court also applies the Federal Rule of Civil Procedure 12(b)(6), *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001), accepting all allegations as true and construing them in the light most favorable to the plaintiff. *See Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).

## II.    Analysis of Allegations

Plaintiff was incarcerated in July 2020 at Chatham County Detention Center. While the incidents giving rise to his complaint occurred after his placement there, the Chatham County Detention Center must be **DISMISSED** because it is not an entity subject to suit under 42 U.S.C. § 1983. *See, e.g., Meyers v. Chatham Cnty. Det. Ctr.*,

3

2022 WL 1215640, at *1 (S.D. Ga. Apr. 25, 2022) ("[T]he Chatham County Detention Center is not an entity subject to suit."). As to his other claims, the Court finds as follows.

### A. Denial of Medical Care

Plaintiff's claims that he was forced by the prison doctor, whom he does not name as a Defendant, to return to general population before his arm was completely healed from an injury he sustained during an attack by other prisoners. Doc. 1 at 7. He claims that two inmates saw that he was weakened and attacked him during the healing process, causing further damage. *Id.* He also claims that he has been denied "chronic care" medication for pain. *Id.* at 10.

To offend the Eighth Amendment, a government official must display "deliberate indifference to the serious medical needs of prisoners . . . ." *Estelle*, 429 U.S. at 104. This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Whether a serious medical need existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011). However, whether defendants were deliberately

indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

To show deliberate indifference, Plaintiff here must show that Defendants had a (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct which constitutes "subjective recklessness as used in the criminal law." *Wade v. McDade*, ___ F.4th ___, 2024 WL 3354963, *2 (11th Cir. July 10, 2024) (articulating deliberate indifference as "subjective recklessness" as that term is used in criminal law);[1] *see also McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). To meet his burden under the third prong, Plaintiff must show that the Defendant was "subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm—with the caveat that, in any event, a defendant who 'respond[s] reasonably' to a risk, even a known risk, 'cannot be found liable' under the Eighth Amendment. *Wade*, 2024 WL 3354963 at *2 (citations omitted).

---

[1] *But see id.* at *10 (Jordan, J. concurring and instructing courts to "look carefully at prior Eleventh Circuit cases to see if they are consistent with the subjective component of deliberate indifference set out in Farmer" to confirm they may continue being cited as binding precedent instead of abrogating all deliberate indifference cases prior to *Wade*.)

The Court assumes, without deciding, that Plaintiff suffered a sufficiently serious medical need, as he claims his arm "came out of the socket." Doc. 1 at 5. However, he fails to allege that any Defendant was deliberately indifferent to that need. He merely complains that the arm was not completely healed and that other inmates took advantage of his weakness. Even assuming that the decision to return him to general population was hasty, such a decision constitutes negligence at best. "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *McElligott*, 182 F.3d at 1254 (quoting *Estelle*, 429 U.S. at 106). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*; *see also Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("Merely negligent failure to protect an inmate from attack does not justify liability under section 1983") (citing *Davidson v. Cannon,* 474 U.S. 344, 347–48 (1986).

Moreover, Defendants cannot be held liable for the separate and unrelated actions of the inmates who were responsible for attacking Plaintiff unless they were deliberately indifferent to a known and likely

threat.  As discussed below, Plaintiff has not alleged such a threat in his failure-to-protect claim.   Nor has Plaintiff named any Defendant who might have been responsible for the decision to place him back in the general population or described that official's subjective awareness regarding the same. *See Wade*, 2024 WL 3354963, at *6 ("[F]ocusing on a prison official's subjective awareness of the risk posed by his own conduct—rather than more vaguely on some allegedly preexisting risk— best squares with how courts and commentators have historically understood and explained criminal recklessness, even outside the Eighth Amendment context.").  This claim is **DISMISSED** because Plaintiff has, at best, alleged negligence by some, unidentified, prison employee.  Even construing the allegations in Plaintiff's favor, amendment would be futile because Plaintiff cannot meet the deliberate indifference burden on this claim, and because he cannot show that any official actor caused the injuries he sustained when he was negligently placed back in general population.

Additionally, Plaintiff's complaints about the pain medication refusals fail to state a deliberate indifference claim.  Failure to provide prescription medication can, in some circumstances, constitute deliberate

7

indifference, *cf. Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). Indeed, the Eleventh Circuit has recognized that prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain. *Brown,* 894 F.2d at 1538 (holding that delay of a few hours in treating an inmate's broken foot, including failing to treat the pain resulting therefrom, may constitute an Eight Amendment violation). However, here, Plaintiff has provided almost no details of chronic pain medication necessity or provided information as to what, if any, treatment was provided instead. And again, he has not identified any individual responsible for the lack of pain medication in his Complaint.

Contrarily, because he has not pleaded himself out of his pain medication claim, Plaintiff will be afforded an opportunity to amend his Complaint on his claim that officials were deliberately indifferent to his serious medical needs by denying him pain medication. For such a claim to survive, however, he must allege that some identified or named official(s) knew of his need, that they were deliberately indifferent to that need under the above quoted standard, and that he was damaged by their failure to reasonably respond–not merely by other prisoners. Otherwise, he fails to state a claim and his Complaint will be dismissed.

## B. Failure to Protect

Plaintiff claims that as soon as he arrived at Chatham County Detention Center, he noticed that neither inmates nor officers "seemed to care about peace and order." Doc. 1 at 5. He says that both inmates and officers "disrespected" him by, for example, spitting on his cell door or pouring urine under his door. *Id*. He therefore "had to" defend himself with words. *Id*. Plaintiff says that after being taunted in this manner, he requested to be placed in either administrative segregation or protective custody because he felt like his life was in danger, but also because he felt that his "well-being" was threatened because of gang activity and prior altercations. He also reported his "mental issues" and requested to be placed in "Unit 1." *Id*. Plaintiff felt it was a "good option" for his safety given the circumstances, but despite this, the "mental doctor" told Plaintiff that he did not need to be placed in "Unit 1." *Id*. Ultimately, the prison officials did nothing to "accommodate" him.

Plaintiff claims that after being placed in "Unit 3," staff and inmates "had issues with [him] based on gang communications and gossip from officers which made the environment hostile again." *Id*. Officers placed several inmates in Plaintiff's cell who "made problems"

with Plaintiff until he was attacked by an inmate.  He claims he was hospitalized due to injuries sustained during the attack, including that his "left arm came out of the socket," which caused permanent damage to his arm, and that his left eye was severely damaged.  *Id.* at 5-6.  While Plaintiff was in the infirmary, an officer "allowed" an inmate to "run up in [his] face several times."  *Id.*

Plaintiff was attacked by another gang member after he was moved to Unit 4B, and then again one month later.  Doc. 1 at 6.  Plaintiff claims that each time he was attacked, the other inmates were the aggressors, but Plaintiff was blamed in the reports.  *Id.*  He claims that Defendant Lewis attempted to "pencil wip [sic]" him by making up "extra charges" to make him look bad because the two had argued about tablet usage.  *Id.* Finally, he claims that he has again requested to be placed in "admin seg, Unit 1 or PC," but has been denied.  Based on the drafting of the allegations, it is unclear whether Unit 1 was the protective custody unit, provided some additional unknown level of protection distinct from "protective custody," or was simply Plaintiff's preferred unit.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833

(1994) (quotes and cites omitted).  "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.  "An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond [] reasonably to the risk . . .'" *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc), *abrogated in part on other grounds by Twombly*, 550 U.S. at 561–63 (citation omitted)).  In other words, "[p]rison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Brown*, 894 F.2d at 1537 (citing *Estelle*, 429 U.S. at 105-06).

Important here, the reported threat must rise to the level of "a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown,* 894 F.2d at 1537 (internal quotation marks and citation omitted).  The general dangerousness of other inmates is not sufficient to support a failure-to-

protect claim. *See, e.g., Goodson v. Benton*, 2020 WL 975089, at *2 (S.D. Ga. Jan. 16, 2020) (citations omitted) ("Prisons are dangerous places because they are filled with people society has already deemed too dangerous to live amongst law abiding persons. Prisoners will always be at some risk of harm simply by being surrounded by these people. [Cit.] In order to trigger a failure-to-protect claim, a plaintiff must allege that the threat rose above the background danger."). Plaintiff never alleges that the officials were subjectively aware of a specific and likely threat against him. Although Plaintiff alleges that he requested transfers after being taunted, and that he subjectively believed that transfer to a different unit would be a better fit, he neither claims that there was an imminent threat or that any named Defendant was aware of that specific imminent threat. He merely complains of the general dangerousness of other inmates, an allegation which does not support a failure-to-protect claim. Next, even assuming Plaintiff has claimed that someone knew of the threat, he has not claimed that any specific individual was deliberately indifferent, *i.e.*, reckless, in ignoring that threat. However, as in his previous claim, he is afforded one opportunity to amend this claim to correct the deficiencies noted.

12

### C. Claims Against Public Defender

Plaintiff next claims that his appointed lawyer, Trevor King, failed to visit him in jail.  *See* doc. 1 at 7-8.  He makes speculative accusations against King regarding "backdating" of documents and generally claims King denied him the right to counsel by not responding to him.  Based on Plaintiff's claim that King was his "court appointed attorney," the Court concludes that he is not a state actor.  Therefore, Plaintiff fails to state a claim against him under § 1983 because King did not act "under color of state law" notwithstanding his appointment as counsel by a judicial officer.  *Polk Cnty. v. Dodson*, 454 U.S. 312, 324 (1981); *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Although an attorney may be sued under Section 1983 if he conspired with someone who did act under color of state law, . . . appellant made no such allegation."); *Rolle v. Glenn*, 712 F. App'x 897 (11th Cir. 2017) ("[T]he district court properly determined, as to the public defenders, that they are not liable because they are not statute actors for purposes of § 1983.").  Plaintiff's claims against King are therefore **DISMISSED**.

### D. Malicious Prosecution

To the extent this claim is decipherable, Plaintiff appears to allege he was held in custody on "old charges" as well as "new" ones. *See* doc. 1 at 7-8. He claims that the "old charges" were never indicted because he was not the aggressor and therefore the charges were false. *Id.* at 7. When he received his "new" possession charges, Plaintiff's bond was denied because "they" did not review the details of the "old charges," in which he was actually the victim. *Id.* at 8. After his detention began, the officers wrote him up so that the "judge and/or attorneys look at the paperwork" it will appear that he is to blame for jailhouse incidents when, in reality, the jailhouse staff causes hostility between and among officers and other inmates. *Id.* The Court construes this claim as a malicious prosecution claim.

To prove malicious prosecution under § 1983, Plaintiff must allege "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147, 1159 (11th Cir. 2020). The elements of the common law tort

14

of malicious prosecution include: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (citation omitted). A malicious prosecution claim does not accrue until the favorable termination occurs. *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). There is no indication, and indeed no allegation, that the criminal proceedings against Plaintiff have terminated in his favor. Moreover, he does not appear to claim that his criminal prosecution was instituted by any present Defendant. Therefore, Plaintiff's malicious prosecution claim fails, and, given these undeniable truths, amendment would be futile. His malicious prosecution claim is therefore **DISMISSED**.

### E. Retaliation

Plaintiff next claims that he tried to ask questions about his lawyer via a tablet, presumably through the use of email. He contacted a "Miss Gordon," whom he identifies as the Unit 4 Counselor, and a "Mr. B. Kephart," who he alleges holds some "property records" role. *See* doc. 1 at 4. Plaintiff states that the two individuals he contacted claimed they

could not speak with him unless Plaintiff's lawyer contacted them directly. *Id.* at 9. He then claims they discriminated against him due to his religion, and that they tried to use their position against him. *Id.* He provides no other details regarding that discrimination. However, he does say that Kephart gave him Captain Irvin's email address. When Plaintiff emailed Irvin, Irvin said he could not do anything about the situation. *Id.* Irvin also asked Plaintiff to refrain from using profanity and even though Plaintiff complied with his request, Irvin took away Plaintiff's tablet privileges and kiosk access. *Id.* Plaintiff then used another person's tablet to ask questions, and Kephart again refused to answer his questions. Plaintiff claims he was unable to see or text his family and friends because Captain Irvin took his privileges away unlawfully. *Id.*

First, there is no indication that Plaintiff experienced discrimination based on the pleadings. Instead, Plaintiff's allegations appear to assert that the officials retaliated against him in violation of the First Amendment. For a prisoner to state a First Amendment retaliation claim under § 1983, the prisoner must establish: (1) that his speech or act was constitutionally protected; (2) that the defendant's

retaliatory conduct adversely affected the protected speech; and (3) that there is a causal connection between the retaliatory actions and the adverse effect on the speech. *Douglas v. Yates,* 535 F.3d 1316, 1321 (11th Cir. 2008).   To prevail, the adverse action that the inmate suffers as a result of the prison official's alleged retaliation must be such that it "would likely deter a person of ordinary firmness from engaging in such speech." *Smith v. Mosley,* 532 F.3d 1270, 1276 (11th Cir. 2008).   The second element of the cause of action thus requires "an objective standard and a factual inquiry." *Id.* at 1277.   The third element, whether there was a causal connection between the retaliatory acts and the adverse effect on the speech, "asks whether the defendants were subjectively motivated to discipline because [the prisoner] complained of the conditions of his confinement." *Id.* at 1278.

Plaintiff has not alleged that he engaged in protected speech.   While a prisoner's filing of a grievance concerning his conditions of his imprisonment is protected speech under the First Amendment, *Douglas,* 535 F.3d at 1321 (quoting *Boxer X v. Harris,* 437 F.3d 1107, 1112 (11th Cir. 2006), *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010)), Plaintiff has not made it clear if that was what he

attempted by emailing Kephart and Gordon.  And, though he complains that Irvin restricted his access arbitrarily, he does not state that it was in response to some action of his.  He merely claims that the limitation was unprovoked.  On amendment, Plaintiff is instructed to make clear whether he asserts that he engaged in protected conduct, and then what that conduct was, and finally, whether he believes that the officials retaliated against him by limiting his access to the tablet and kiosk. Then he must show that the limitation "adversely impacted" his protected speech.

## III.  Conclusion

A *pro se* plaintiff is entitled to at least one opportunity to amend potentially viable claims. *Jenkins v. Walker*, 620 F. App'x 709, 711, (11th Cir. 2015) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002)) ("When a more carefully drafted complaint might state a claim, a district court should give a pro se plaintiff at least one chance to amend the complaint before the court dismisses the action."); *see also* Fed. R. Civ. P. 15(a)(2)(courts should grant leave to amend "freely . . . when justice so requires").

Accordingly, the Court will afford Plaintiff a single opportunity to amend his Complaint as to those claims which appear viable. Consequently, Plaintiff may attempt to better articulate his claims (1) that officials, whom he must attempt to identify, were deliberately indifferent to his medical needs by denying him pain medication; (2) that a specific official, whom he must attempt to identify, failed to protect him from a known and specific threat of prisoner violence; and (3) that Irvin retaliated against him for exercising his First Amendment rights. However, his claim against Chatham County Detention Center and Trevor King are **DISMISSED**. His claim that he was maliciously prosecuted and his medical claim regarding being placed in general populations before his arm was healed are also **DISMISSED**. To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send Plaintiff a blank Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)). Plaintiff is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). He is further advised that failure to timely submit his amended

19

complaint by **August 7, 2024** may result in this case being dismissed for failure to obey a court order or failure to prosecute.  *See* Fed. R. Civ. P. 41(b).

      **SO ORDERED**, this 17th day of July, 2024.

                               _____

                               CHRISTOPHER L. RAY
                               UNITED STATES MAGISTRATE JUDGE
                               SOUTHERN DISTRICT OF GEORGIA